```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────
MICHAEL BUXBAUM,

                    Plaintiff,              25-cv-509 (JGK)

        - against -                          MEMORANDUM OPINION
                                             AND ORDER
ROBERT C. GOTTLIEB & ASSOCIATES,
PLLC,

                    Defendant.
─────────────────────────────────────
```

**JOHN G. KOELTL, District Judge:**

The defendant, Robert C. Gottlieb & Associates, PLLC, represented the plaintiff, Michael Buxbaum, in various family court and criminal court proceedings related to his repeated violations of an order of protection. The defendant also represented the plaintiff's parents in a separate civil commitment proceeding against the plaintiff. The plaintiff brought this action against the defendant for legal malpractice, alleging that the defendant charged excessive legal fees and had a purported conflict of interest.

The defendant has moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the defendant's motion to dismiss is **granted.**

**I.**

**A.**

Unless otherwise noted, the following facts are accepted as true for the purposes of this motion.[1] These facts are taken from the Amended Complaint (the "AC") and the documents that it incorporates by reference, including documents from the family court and criminal court proceedings related to the plaintiff's violations of an order of protection, as well as the Order to Show Cause filed in the matter entitled <u>In re: Stewart and Geri Buxbaum for an Order Authorizing Assisted Outpatient Treatment for Michael Buxbaum</u> in the New York State Supreme Court, Rockland County (the "Civil Commitment Action"). AC, ECF No. 12; Decl. of Robert C. Gottlieb ("Gottlieb Decl."), ECF No. 47.[2]

The plaintiff is a 52-year-old divorced man. <u>See</u> Ex. J to Gottlieb Decl., ECF No. 47-10. He is an accountant by training and recently managed a real estate business. <u>Id.</u>

On October 23, 2018, the plaintiff entered into a stipulation that limited his contact with his daughter to email once a day. <u>See</u> Ex. B to Gottlieb Decl. at *50–51 (pdf pagination), ECF No. 47-2. The plaintiff repeatedly violated the

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.
[2] <u>See</u> <u>Wims v. N.Y. City Police Dep't</u>, No. 10-cv-6128, 2011 WL 2946369, at *2 (S.D.N.Y. July 20, 2011) ("[A] district court may rely on matters of public record in deciding a motion to dismiss, including arrest reports, criminal complaints, indictments and criminal disposition data.").

2

agreement. See id. at *39-72. The Legal Aid Society of Rockland County filed numerous family offense petitions against the plaintiff in Family Court in Rockland County. See id. On March 24, 2022, the Family Court issued an Order of Protection (the "OOP") that barred the plaintiff from contacting his daughter. See id. at *54-55. Because the plaintiff consistently violated the OOP and refused to appear in court, on May 10, 2023, the plaintiff was remanded to Rockland County Jail. See id. at *11, *83.

On May 26, 2023, the plaintiff's family retained the defendant to represent the plaintiff in connection with the criminal charges pending against him pertaining to his violations of the OOP. See Ex. H to Gottlieb Decl., ECF No. 47-8. On July 14, 2023, the plaintiff was released from Rockland County Jail to receive mental health treatment. See Ex. B to Gottlieb Decl. at *11-12, *84, *87-89.

The plaintiff was arrested multiple times on criminal charges for violations of the OOP. See id. at *12, *91-96. On January 8, 2024, the plaintiff pleaded guilty to one count of criminal contempt in the second degree, in violation of N.Y. P.L. § 215.50(3), in Orangetown Justice Court and, as an alternative to incarceration, began participating in a mental health program, which he failed to complete. See id. at *13.

3

As a result of his repeated non-compliance with the requirements of the mental health program, the plaintiff was on the verge of being sentenced to incarceration. See id. at *98–99. To prevent the possibility of incarceration, the plaintiff's parents retained the defendant and, on February 13, 2024, filed an Order to Show Cause in the Civil Commitment Action, seeking mental health outpatient treatment for the plaintiff. See id. at *3–18. However, the Civil Commitment Action did not progress.

Instead, the defendant successfully petitioned the criminal court to conduct a psychiatric examination of the plaintiff pursuant to N.Y. C.P.L. § 730. See Ex. J to Gottlieb Decl., ECF No. 47-10. As a result of the examination, on April 10, 2024, all pending criminal charges against the plaintiff were dismissed. See Ex. K to Gottlieb Decl., ECF No. 47-11.

**B.**

On January 15, 2025, the plaintiff initiated this action. ECF No. 1. On February 25, 2025, the plaintiff filed the AC. In the AC, the plaintiff asserts that the defendant committed legal malpractice, alleging that the defendant charged his parents excessive legal fees and had a purported conflict of interest in representing both the plaintiff in his criminal proceedings and his parents in the Civil Commitment Action. See AC at 6. The plaintiff claims that the defendant's conduct resulted in his "lack of attorney representation in [matters] before the

4

criminal court in the Town of Orangetown," his confinement at Rockland County Jail for fifty days and Rockland County Psychiatric Center for twenty days, "loss of freedom," "loss of business opportunity," and emotional damages. Id. The plaintiff seeks $600,000 in compensatory damages and $5.5 million in punitive damages on his malpractice claim. See id. at 7. The plaintiff also seeks to recover the legal fees that his parents paid to the defendant. See id. at 6.

On April 18, 2025, the defendant moved to dismiss the AC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Mot. to Dismiss, ECF No. 46. The defendant argues that the plaintiff lacks standing to recover the legal fees paid by his parents and has failed to allege the three elements necessary to state a legal malpractice claim.

## II.

When presented with motions under both Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction and Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted, the Court should consider the jurisdictional challenge to a given claim first. See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

The plaintiff bears the burden of proving the Court's subject matter jurisdiction by a preponderance of the evidence.

5

Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true. See J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004). The Court does not, however, draw all reasonable inferences in the plaintiff's favor. Id. Where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, to determine whether subject matter jurisdiction exists. See APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

6

the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Kerik v. Tacopina, 64 F. Supp. 3d 542, 549-50 (S.D.N.Y. 2014).

When faced with a pro se complaint, the Court must construe the complaint liberally and interpret it to raise the strongest arguments that it suggests. Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.; see also Yajaira Bezares C. v. The Donna Karan Co. Store LLC, No. 13-cv-8560, 2014 WL 2134600, at *1 (S.D.N.Y. May 22, 2014).

7

**III.**

**A.**

In moving to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, the defendant argues that the plaintiff lacks Article III standing to bring a claim seeking to recover the attorney's fees paid to the defendant by the plaintiff's parents. See Def. Br. at 8–9, ECF No. 48.

To have standing to sue, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016). A "particularized" injury is one that "affect[s] the plaintiff in a personal and individual way." Id.

With respect to the legal fees that the plaintiff seeks to recover in this case, because the plaintiff's parents—and not the plaintiff—paid the legal fees to the defendant, see AC at 6, the plaintiff has failed to show that he suffered a "particularized" injury that affected him in a "personal and

8

individual" way, Spokeo, 578 U.S. at 339. Rather, any alleged overpayment of legal fees to the defendant would have harmed the plaintiff's parents, not the plaintiff himself. Accordingly, the plaintiff lacks standing to seek this relief. See, e.g., Murthy v. Missouri, 603 U.S. 43, 64 (2024) (observing that it was "unclear why [the plaintiff] would have standing to sue for his brother's injury"); Barkely v. Otisville Corr. Facility, No. 24-cv-3647, 2024 WL 3905343, at *2 (S.D.N.Y. Aug. 21, 2024) (concluding that the plaintiff lacked standing to bring claims arising from an alleged search in which the plaintiff's wife, and not the plaintiff, suffered injuries). The defendant's Rule 12(b)(1) motion to dismiss the plaintiff's claim seeking the return of legal fees is therefore **granted.**

## B.

On the merits, the defendant contends that the plaintiff has failed to state a plausible claim for legal malpractice. See Def. Br. at 9-16. The plaintiff alleges that the defendant's purported conflict of interest, representing the plaintiff in his criminal case and his parents in the Civil Commitment Action against him, constituted malpractice. See AC at 6. The plaintiff further alleges that the purported conflict of interest proximately caused his "lack of attorney representation in legal matters before the criminal court in the Town of Orangetown" and his "confinement at the Rockland County jail and Rockland County

9

Psychiatric Center." Id. As a result, the plaintiff allegedly suffered various injuries, including "loss of freedom," "loss of business opportunity," and emotional damages. Id.

To prevail on a legal malpractice claim under New York law, a plaintiff must establish: "(1) attorney negligence; (2) which is the proximate cause of a loss; and (3) actual damages." Nordwind v. Rowland, 584 F.3d 420, 429 (2d Cir. 2009). "A conflict of interest, even if a violation of the Code of Professional Responsibility, does not by itself support a legal malpractice cause of action." Stonewell Corp. v. Conestoga Title Ins. Co., 678 F. Supp. 2d 203, 211–12 (S.D.N.Y. 2010). The plaintiff must still show that the alleged conflict proximately caused "an actual injury." Id.

In moving to dismiss, the defendant argues that the plaintiff has satisfied none of these elements. See Def. Br. at 9–16. Each element is addressed in turn.

i.

The plaintiff's legal malpractice claim is based on the defendant's alleged conflict of interest. See AC at 6. With respect to the first element of a legal malpractice claim, the question is whether the purported conflict of interest constitutes "attorney negligence." Nordwind, 584 F.3d at 429.

To establish attorney negligence, a plaintiff generally must show that "[the defendant] failed to exercise the ordinary

10

reasonable skill and knowledge commonly possessed by a member of the legal profession." Rubens v. Mason, 387 F.3d 183, 189 (2d Cir. 2004). Common examples of circumstances in which an attorney may be held liable for malpractice include "ignorance of the rules of practice, failure to comply with conditions precedent to suit, or [] neglect to prosecute or defend an action." Hatfield v. Herz, 109 F. Supp. 2d 174, 180 (S.D.N.Y. 2000).

In this case, the plaintiff has not alleged that the defendant was negligent in its representation of the plaintiff. The plaintiff has provided few details regarding the context of the defendant's alleged simultaneous representations. See AC at 6. In any event, the court filings in the underlying proceedings establish that the defendant's conduct in the plaintiff's criminal case and the Civil Commitment Action were reasonable and taken for the plaintiff's benefit. When the plaintiff's parents retained the defendant as counsel and commenced the Civil Commitment Action, the plaintiff had clear mental struggles and was on the verge of being sentenced to incarceration. See Ex. B to Gottlieb Decl. at *12, *14, *99. The only plausible inference to be drawn is that the defendant pursued the Civil Commitment Action with the plaintiff's best interests in mind—the plaintiff's interests in receiving psychiatric treatment and avoiding incarceration. Moreover, the

11

Civil Commitment Action never progressed beyond the filing of an initial Petition and Order to Show Cause. In fact, the defendant's representation of the plaintiff in his criminal case ultimately resulted in the dismissal of all pending criminal charges against the plaintiff. See Ex. K to Gottlieb Decl. Therefore, the plaintiff has not alleged that the defendant was conflicted in its representation, that the plaintiff was negatively affected by any purported conflict, or that the defendant otherwise failed to exercise reasonable skill in its representation of the plaintiff.

Accordingly, the plaintiff has failed to plead attorney negligence. The defendant's motion to dismiss the AC pursuant to Rule 12(b)(6) is therefore **granted**. For completeness, however, the Court addresses the remaining two elements of a legal malpractice claim.

## ii.

The defendant argues that the plaintiff has failed to allege that the defendant's purported conflict of interest was the proximate cause of the plaintiff's "lack of attorney representation in matters before the criminal court in the Town of Orangetown," "the confinement at the Rockland County jail" and "Psychiatric Center," "loss of freedom," "loss of business opportunity," and "emotional suffering of stress." See AC at 6.

12

To establish proximate cause, a plaintiff must meet a "case within the case requirement," showing that "but for the attorney's conduct [the plaintiff] would have prevailed in the underlying matter or would not have sustained any ascertainable damages." Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc., 780 N.Y.S.2d 593, 596 (App. Div. 2004); see also Stonewell Corp., 678 F. Supp. 2d at 209 ("[T]he plaintiff must show that but for the attorney's negligence, what would have been a favorable outcome was an unfavorable outcome.").

In this case, the plaintiff has failed to allege that the purported conflict proximately caused his injuries. The plaintiff's allegation of proximate cause is conclusory and lacks "sufficient detail" to support a plausible inference that the plaintiff would not have sustained damages but for the defendant's representation of the plaintiff's parents in the Civil Commitment Action. See Home Ins. Co. v. Liebman, Adolf & Charme, 683 N.Y.S.2d 519, 520 (App. Div. 1999). Moreover, to the extent that the plaintiff seeks damages in connection with his incarceration from May 10, 2023, to July 14, 2023, at Rockland County Jail, the defendant was not retained as the plaintiff's counsel until May 26, 2023–over two weeks after his incarceration began. See Ex. B to Gottlieb Decl. at *83; Ex. H to Gottlieb Decl. Therefore, the defendant's alleged conflict of

13

interest could not have been the but-for cause of the plaintiff's confinement in Rockland County Jail.

### iii.

To establish the third element of a legal malpractice claim, a plaintiff must show that he suffered "actual and ascertainable damages." Bua v. Purcell & Ingrao, P.C., 952 N.Y.S.2d 592, 596 (App. Div. 2012). Speculative damages are insufficient to form a basis for a malpractice claim. See Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer, 867 N.E.2d 385, 388 (N.Y. 2007). It is well-established that recovery in legal malpractice claims is limited to "pecuniary damages." Dombrowski v. Bulson, 971 N.E.2d 338, 340 (N.Y. 2012).

In this case, the plaintiff has failed to allege that he suffered actual and ascertainable damages. The plaintiff's confinement in jail and the psychiatric center, loss of liberty, and emotional suffering are harms that are "nonpecuniary in nature" and therefore not remediable through a legal malpractice claim. Id. (concluding that the loss of liberty attendant to a period of incarceration is nonpecuniary in nature and not available in an action for attorney malpractice); Dirito v. Stanley, 611 N.Y.S.2d 65, 65 (App. Div. 1994) (affirming dismissal of damages claim for emotional pain and suffering); Wolkstein v. Morgenstern, 713 N.Y.S.2d 171, 173 (App. Div. 2000) ("A cause of action for legal malpractice does not afford

14

recovery for any item of damages other than pecuniary loss so there can be no recovery for emotional or psychological injury.").

The plaintiff's alleged loss of business opportunities is "speculative" and "[does] not give rise to a reasonable inference that" any actual or ascertainable damages exist. Judd Burstein, P.C. v. Long, 797 F. App'x 585, 588 (2d Cir. 2019).

Finally, as explained above, the plaintiff's claim for excessive legal fees should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Moreover, that claim is not viable on the merits because the plaintiff has failed to allege that the plaintiff himself suffered any actual or ascertainable damages. See Young v. Quatela, 963 N.Y.S.2d 267, 268 (App. Div. 2013) (concluding that pecuniary damages incurred by the plaintiff's father, who was not a party to the action, did not support a viable claim for damages in the plaintiff's action to recover damages for legal malpractice). Any pecuniary losses related to the defendant's legal fees were incurred by the plaintiff's parents.

In sum, the plaintiff has failed to allege facts to establish any of the elements of a legal malpractice claim. The legal malpractice claim is therefore **dismissed.**

15

## C.

In opposing this motion, the plaintiff did not request the opportunity to file a second amended complaint. However, while this motion was pending, the plaintiff attempted on several occasions to file additional amended complaints. See ECF Nos. 58, 65, 66, 71, 75. The Magistrate Judge concluded that amendment would be futile and denied the plaintiff's requests to file additional amended complaints. See ECF Nos. 63, 67, 68. Although the proposed amendments purport to assert a new claim under the False Claims Act, the facts alleged in the proposed amended pleadings sound in the same conflict of interest and malpractice alleged in the Amended Complaint. It is clear that no amendment could cure the defects in the plaintiff's legal malpractice claims as noted above, and the plaintiff's allegations would not plausibly state a claim under the False Claims Act. Therefore, any further amendment would be futile, and the Amended Complaint is **dismissed with prejudice.**

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the defendant's motion to dismiss is **granted**. The Clerk is respectfully directed to enter judgment dismissing the Amended

Complaint with prejudice. The Clerk is also directed to close ECF No. 46 and to close the case.

The Clerk is requested to mail a copy of this Memorandum Opinion and Order to the pro se plaintiff and to note mailing on the docket. The Clerk is also requested to email a copy of this order to the plaintiff at michaelbuxbaum@icloud.com and to note service on the docket.

**SO ORDERED.**

Dated:   New York, New York
         July 29, 2025

                                        _____
                                        John G. Koeltl
                                        **United States District Judge**